IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                                                          NO. 10-CR-1004 JC

JASON JUDAH,

        Defendant.

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTION TO SUPPRESS**

THIS MATTER comes before the Court on Defendant's Motion to Suppress Evidence and Supporting Memorandum, filed July 30, 2010 (Doc. 21) ("Motion"). The issues for resolution are whether: (1) the initial traffic stop was valid; (2) the investigative detention that followed was reasonable; and (3) the warrantless search of Defendant's vehicle was lawful. Having considered the Motion, the Government's Response (Doc. 28) and Addendum thereto (Doc. 32), Defendant's Reply (Doc. 34), and held an evidentiary hearing on November 10, 2010, I find the Motion not well taken and it will be denied. I enter this Memorandum Opinion and Order incorporating my essential findings for the record as required by Fed.R.Crim.P. 12(d).

**I.     Background/Findings of Fact**

On July 31, 2009, at approximately 8:00 p.m., Officer Nathan Kempton of the Farmington Police Department was traveling eastbound on Cedar Street in Farmington, New Mexico. When Officer Kempton reached the intersection of Cedar and Commercial streets, he turned south on Commercial and immediately saw a black Chevrolet Avalanche traveling

northbound on Commercial in the southbound lane of traffic.  The Avalanche overtook another northbound vehicle then moved into its proper northbound lane.  *See Government's Hearing Ex. 2*.  Officer Kempton believed the vehicle had violated New Mexico Stat. Ann. § 66-7-308 by overtaking another vehicle too close to an intersection where it was not safe to do so.  Kempton made a U-turn and activated his emergency equipment, stopping the vehicle.  Kempton initially observed that the driver of the Avalanche was a male but did not know the driver's identity at the time he initiated the stop.  *See Draft Hearing Transcript*[1] at 10:5-14*; Defendant's Hearing Ex. 1*.

      Officer Kempton approached the Avalanche and requested a driver's license, registration, and insurance documentation.  Jason Judah produced a valid license and registration but was unable to provide proof of current insurance for the vehicle.  Officer Kempton then recognized Defendant Jason Judah and knew that Judah had past involvement in illegal drug activity.  *Id.*  When Kempton first approached the vehicle and spoke with Judah, he noticed a faint odor of marijuana coming from inside the Avalanche.  *Def's Ex. 1; Tr.* at 11:5-6.  Smelling marijuana and having knowledge that Judah had been involved in illegal drug activity, Officer Kempton reasonably requested that Judah step out of the vehicle.  Judah complied.  As Judah exited the Avalanche, Officer Kempton observed several knives in plain view within the drivers' side door panel.  *Tr.* at 11:16-19*; Govt's Ex. 3*.  Seeing the weapons within the driver's reach, Kempton's concern for safety increased and he asked Judah if he had any weapons on his person.  Judah told Kempton that he had a knife in his right front pocket.  Kempton then conducted a *Terry* pat down and retrieved a folding knife from Judah's pocket.

---

      [1]The citations to the transcript herein reference the court reporter's original, unedited version.

During the initial stages of the pat down, Kempton noticed that Judah appeared very nervous; Judah stuttered and had sweaty hands. After removing the knife from Judah's pocket, Kempton asked for permission to perform a further search and Judah eventually answered "go ahead." *Tr.* at 65:14. After Kempton briefly reached a hand inside Judah's pocket, Judah ran away. Following a foot chase, Kempton arrested Judah for evading a police officer in violation of New Mexico Stat. Ann. § 30-22-1(B). Judah was placed in the patrol car and was advised of his *Miranda* rights. A standard inventory search of the Avalanche prior to towing turned up a loaded pistol. The Court notes the entire length of the detention culminating in Judah's arrest was less than six minutes.

Judah is charged with being a felon in possession of a firearm and ammunition. *See Doc. 2*. Presently, Judah seeks suppression of the physical evidence on the grounds that the traffic stop was not valid at inception, the scope of the detention was too broad, and the warrantless search of the Avalanche was unlawful.

## II.  Legal Standard

A routine traffic stop "is characterized as an investigative detention, the reasonableness of which is judged under the principles of *Terry v. Ohio*, 392 U.S. 1 [ ] (1968)." *United States v. West*, 219 F.3d 1171, 1176 (10th Cir. 2000). An officer may pose additional questions, and thereby expand a traffic stop beyond its original scope, if during the initial stop the officer acquires "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Galindo-Gonzales*, 142 F.3d 1217, 1221 (10th Cir. 1998) (quotation omitted). "The existence of objectively reasonable suspicion of illegal activity does not depend on any one factor, but on the totality of the circumstances." *Id.* (quotation omitted). Under *Terry*, the scope of an expanded investigative detention is limited to the circumstances

that justified expanding the detention.  *Id*.

A warrantless inventory search of an automobile for the purposes of protecting the owner's property while the automobile is in police custody –  as well as protecting the police from claims over lost or stolen property and from potential danger –  is permissible under the Fourth Amendment if certain preconditions are met.  *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976).  A warrantless inventory search must be performed under established, standardized criteria and must not be based on suspicion of evidence of criminal activity.  *Id.* at 372, *Chambers v. Maroney*, 479 U.S. 367, 375 (1987).  An inventory exception to the warrant requirement will not be valid if it is used as "a ruse for a general rummaging in order to discover incriminating evidence."  *Florida v. Wells*, 495 U.S. 1,4 (1990).

The "automobile exception" to the warrant requirement permits  law enforcement officers who have "probable cause to believe a car contains contraband [to] search the car without first obtaining a search warrant." *United States v. Beckstead*, 500 F.3d 1154, 1165 (10th Cir. 2007); *see also California v. Carney*, 471 U.S. 386, 392 (1985).  Once the suspicions rise to the level of probable cause, officers are empowered to search "the entire vehicle, including the trunk and all containers therein that might contain contraband." *United States v. Bradford*, 423 F.3d 1149, 1160 (10th Cir. 2005).

**III.**     **Analysis**

    **A.**     **The Traffic Stop was Valid at Inception**

The Court determines that reasonable suspicion for the *Terry* stop was present and that the stop was not pretextual. Officer Kempton observed Defendant's vehicle traveling on the wrong side of an unmarked roadway in a residential area to overtake another vehicle without sufficient distance to safely do so before reaching an intersection.  As it happens, Officer

Kempton's reasonable suspicion that there was a violation of N.M. Stat. Ann. § 66-7-308 is evident on the undisputed evidence. Defendant argues that "the government created the infraction" when Officer Kempton turned onto Commercial. This argument itself presupposes there was, in fact, a violation. Because another motorist could be turning South onto Commercial from Cedar and not be visible to northbound traffic on Commercial until the turn was made, it appears imperative that the southbound traffic remain in the designated travel lane when approaching the intersection. *See* N.M. Stat. Ann. § 66-7-312 (Limitations on Overtaking on the Left; a legal pass is "completely made without interfering with safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken."). A vehicle turning onto Commercial (in this case, Officer Kempton's patrol car) at the same time another vehicle is traveling north in the southbound lane approaching the intersection creates a dangerous situation, and it is the *potential* for harm that makes the pass unsafe.

Moreover, the narrow legal inquiry for purposes of this Motion is not whether a traffic violation actually occurred, but whether Officer Kempton reasonably believed there was a traffic violation. *See United States v. Orduna-Martinez*, 561 F.3d 1134, 1137 (10th Cir. 2009). The Court finds that the traffic stop was based on Kempton's reasonable belief that the black Chevrolet Avalanche he encountered unlawfully failed to stay in the right hand lane available for northbound traffic in violation of N.M. Stat. Ann. § 66-7-308. Accordingly, the initial traffic stop was valid.[2]

---

[2]The Court reiterates its finding that Kempton did not know who was driving the Avalanche until he got to the window of the vehicle and saw Defendant Judah. To accept Defendant's argument to the contrary, the Court would have to believe not only that Kempton was dishonest in his testimony, but also that Kempton was following Judah and then somehow encountered him head-on. Accordingly, the traffic stop was not pretextual.

5

### B.      The Scope of the Detention was Legitimately Broadened Based on Officer Kempton's Observations and the Information Known to Him

During the brief investigative traffic stop, Officer Kempton quickly developed an objective, particularized basis for suspecting Jason Judah might be involved in criminal activity. When initially interacting with Judah through the truck window, Kempton smelled marijuana and also recognized Judah as an individual with past criminal drug activity. Accordingly, it was reasonable for Officer Kempton to ask Judah to step out of the truck. *United States v. Rice*, 483 F.3d 1079, 1084. When Judah exited the vehicle, Kempton saw multiple knives within the driver's reach inside the driver's side door panel in plain view. Kempton then asked Judah if he had any weapons on his person and Judah said he had a knife in his right front pocket. Kempton conducted a permissible weapons pat-down, beginning with removing the knife Judah had identified.

The parties' accounts differ as to whether Judah then consented to a further search before he ran away from Kempton. Kempton testified that Judah answered "go ahead" when Kempton asked him if he could search further while Judah testified that he did not give permission. Though the recording of the stop is inaudible at this juncture, the video shows Kempton momentarily reaching in Judah's pocket but removing nothing, at which time Judah ran away from Kempton. At the hearing, I found Kempton's testimony credible and determined that Judah consented to the further search, *see Tr.* at 92:23, though as the Government points out that the pocket search is not a pivotal suppression issue because the brief intrusion turned up no evidence.[3] In sum, the Court concludes that the detention was reasonable in scope and duration

---

[3]Judah makes a general assertion, unsupported by law, that what he perceives as an impermissible search of his pocket is what prompted him to run, leading to his arrest and the attendant vehicle inventory search that turned up the firearm forming the basis of the charge

given the totality of the circumstances and the facts as they developed in Officer Kempton's presence.

      **C.**      **The Search of the Vehicle was Valid**

Kempton chased Judah for approximately half a mile before Judah surrendered. Kempton then arrested Judah for evading a police officer in violation of New Mexico Stat. Ann. § 30-22-1(B). Judah, arrested, was unable to drive his uninsured vehicle, which was towed. Pursuant to the Farmington Police Department's standard policy, Judah's vehicle was subject to a routine inventory search, during which law enforcement found, *inter alia*, a loaded pistol. According to the Farmington Police Department Critical Policy and Procedures, Search and Seizure 101-10, Inventory Searches of Seized Vehicles or Other Property, officers are directed to conduct an inventory search where a seized vehicle is legally towed by the police. department. *See Govt's Response, Ex. 2.* Accordingly, the inventory search was proper.

Moreover, the Government contends that the automobile search was supported by probable cause to believe it contained contraband. "Where an officer legitimately stops a car, and has probable cause to believe drugs are concealed in that car, he may conduct a warrantless search of the car and the containers within it that could conceal the object of the search." *United States v. Ross,* 456 U.S. 798 (1982), *United States v. Mercado*, 307 F.3d 1226, 1228 (10th Cir. 2002). Here, Officer Kempton smelled marijuana coming from inside the vehicle driven by a known drug dealer, he observed multiple knives in the driver's side door panel, Judah had a knife in his pocket, Judah appeared overly nervous outside the vehicle, and Judah ran away from Officer Kempton. These collective facts known to Officer Kempton gave rise to probable cause

---

against him.  *See, e.g., Tr.* at 85.

to believe the vehicle contained contraband.[4]

## IV. Conclusion

In summary, the initial investigatory traffic stop was lawful and Officer Kempton was permitted to ask Judah to step out of the car for safety. The smell of marijuana and presence of weapons in the vehicle driven by a known drug criminal legitimately broadened the scope of the initial detention. Officer Kempton justifiably inquired about drugs and performed a *Terry* weapons pat down and Judah consented to a further search. Judah then ran from Officer Kempton during the investigative detention. When Judah ran, he violated New Mexico Stat.Ann. § 30-22-1B and Officer Kempton lawfully arrested him for this offense. As a result of the lawful arrest (as well as the fact that Judah could not operate the vehicle without insurance), Judah's vehicle was to be towed. Prior to towing, a standard and lawful inventory search turned up a loaded firearm, leading to the present charge of felon in possession against Judah. Given this matrix of operative facts and law, I find no basis upon which to suppress evidence against Defendant Judah.

---

[4]Additionally, the search of the Avalanche was permissible as a protective weapons sweep under *United States v. Chambers*, No. 09-8-86, 2010 WL 2413236 (C.A.10 June 16, 2010). Although Defendant Judah did not actually attempt to gain control of a weapon in the officer's presence, as did the *Chambers* defendant, additional supporting facts here in the form of an incomplete weapons pat down combined with Judah running away from officer Kempton lead to the same result. Officer Kempton had reasonable suspicion to believe that Defendant was dangerous, supporting a protective weapons search of the vehicle.

WHEREFORE,

**IT IS ORDERED** that Defendant's Motion to Suppress Evidence and Supporting Memorandum, filed July 30, 2010 (Doc. 21) is hereby **DENIED**.

Dated December 20, 2010.

_____
SENIOR UNITED STATES DISTRICT JUDGE